# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MARIA FLOWERS,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No.** |
| ) | |
| **v.** ) | **Judge** |
| ) | **Magistrate Judge** |
| **TENNESSEE HEALTHCARE** ) | |
| **MANAGEMENT, INC., d/b/a HCA** ) | **Jury Demand** |
| **PHYSICIAN SERVICES GROUP,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

For her Complaint against Defendant Tennessee Healthcare Management, Inc., d/b/a HCA Physician Services Group ("Defendant"), Plaintiff Maria Flowers ("Ms. Flowers") states:

## PARTIES

1.      Ms. Flowers is a former employee of Defendant.

2.      Defendant is a Tennessee corporation with its principal place of business at 1 Park Plz, Nashville, Tennessee 37203-6527.  Defendant may be served with process through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5564.

## JURISDICTION AND VENUE

3.      This is an action for equitable relief and damages for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Family and Medical

Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391.

4.     Ms. Flowers has met all conditions precedent to the filing of this Complaint. She timely filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 3 and July 27, 2021, and February 7, 2022. The EEOC mailed her Notices of Right to Sue for all charges on June 22, 2022.

## FACTS

5.     Ms. Flowers is an African American female who began working for Defendant on January 13, 2016, as a Senior Business Analyst. In May 2018, she became a Manager of Patient Safety and Risk reporting to Defendant's Assistant Vice President of Quality, Brent Kose, while also retaining her Senior Business Analyst duties.

6.     Ms. Flowers was qualified for her jobs with Defendant and performed them in a competent and satisfactory manner.

7.     During her employment, Defendant subjected Ms. Flowers to disparate treatment and discriminated against her in the terms, conditions, and privileges of employment because of her race. The discrimination included taking duties away from her, refusing to promote her and/or change her title to a Director, refusing to provide pay raises, and treating her differently and less favorably than non-African American colleagues.

8.     On November 27, 2019, Ms. Flowers had lunch with Reigen Tuggle, Vice President of Human Resources for one of Defendant's affiliated entities, Southern Hills Hospital. Ms. Flowers expressed concerns of race discrimination in her employment with Defendant to Ms. Tuggle.

2

9. Ms. Tuggle reported Ms. Flowers' concerns of race discrimination to Defendant's Human Resources Director, Rachel White.

10. On December 3, 2019, Defendant's Human Resources Manager, Andrea Berkovsky, scolded Ms. Flowers for "going over her head" and did nothing to address her reported concerns of race discrimination.

11. Ms. Berkovsky attempted to rebut Ms. Flowers' concerns of race discrimination and stated that she had done "research" regarding "diversity in the company" and determined that there were 45 people of color in the company.

12. On December 2, 2019, Ms. Flowers emailed Mr. Kose and asked him to change her title to Director of Patient Safety and Risk, which was consistent with her job duties and responsibilities, and to provide her a concurrent pay raise.

13. Mr. Kose replied to Ms. Flowers' email and scheduled a meeting for December 11, 2019. He told her that she needed to provide him specific examples related to her job performance proving that she deserved a Director role.

14. On December 11, 2019, Ms. Flowers met with Mr. Kose. He told her that she was "not ready" for a Director position due to alleged "performance issues," even though she was admittedly "already doing the work of a Director."

15. Ms. Flowers asked Mr. Kose for specific examples of her alleged performance issues but he could not provide any. Mr. Kose then stated, for the first time, that her lack of performance was "an ongoing topic of discussion" among Defendant's Assistant Vice Presidents and its Chief Medical Officer, Dr. Christopher Ott. He told her that she should "use [her] anger to get [her]self in the role." He encouraged Ms. Flowers to speak with Dr. Ott about her alleged performance issues.

3

16.     On December 18, 2019, Ms. Flowers separately spoke to Assistant Vice President Cindy Burress and to Dr. Ott.  She informed them that Mr. Kose had told her that she had performance problems and that she would like constructive feedback on how to improve on any such problems.

17.     Both Ms. Burress and Dr. Ott told Ms. Flowers that they did not have any concerns about her job performance.

18.     Dr. Ott further told Ms. Flowers that she was the "heir apparent" for the next Director position and indicated that she would be promoted to Director following the first quarter 2020 budget review or sooner if another Director left.

19.     On December 30, 2019, Ms. Flowers sent follow up emails to Dr. Ott and Mr. Kose regarding their discussions.

20.     On January 9, 2020, Mr. Kose berated Ms. Flowers for communicating with Human Resources, Ms. Burress, and Dr. Ott and for sending her December 30, 2019, email; accused her of "subversive behavior"; stated that "no one in the department trusted [her]"; that he had "clearly identified [her alleged] performance issues" to her when he had not done so; that she should have followed up with him instead of HR, Ms. Burress, and Dr. Ott; that it was "not her place to go behind [his] back" and that she should "refrain from going to HR, Ms. Burress, and Dr. Ott in the future"; that he had "received anonymous complaints about [her]" but was "not at liberty to share any details"; that "any promotion of [her] had to go through [him]"; that he could "forgive but would not forget"; and that she could "look for another role in the company if [she] wanted to."  During this interaction, Mr. Kose was visibly upset, red in the face, yelled and glared at Ms. Flowers in a hostile and intimidating manner, and threatened her continued employment.

4

21. Ms. Flowers immediately reported Mr. Kose's harassment, intimidation, ridicule, and threats to her supervisor, Director of Quality Lisa Boghozian, and to Ms. Berkovsky in Human Resources.

22. Ms. Boghozian expressed her shock and concern that Mr. Kose had "acted out" toward Ms. Flowers in the manner that he did and stated that Mr. Kose owed her an apology.

23. Mr. Kose told Ms. Boghozian that she needed to "get in line with [him]" against Ms. Flowers and stated that he wanted to have input on Ms. Flowers' performance review.

24. On January 14, 2020, Ms. Flowers met with Ms. Berkovsky and reported Mr. Kose's discriminatory and retaliatory behavior toward her.

25. Ms. Berkovsky stated that she was "confused" because Dr. Ott had directed Mr. Kose to get Ms. Flowers in a Director role in Ms. Berkovsky's discussions with Dr. Ott and Mr. Kose.

26. Ms. Flowers advised Ms. Berkovsky that Mr. Kose had told her that she could "look for another role in the company." Ms. Berkovksy responded that she would share Ms. Flowers' concerns about Mr. Kose's behavior with Dr. Ott.

27. Ms. Berkovsky had a second meeting with Ms. Flowers on January 14, 2020, and called Mr. Kose into this meeting. Mr. Kose reiterated that Ms. Flowers was "not Director-level material" and that he had received "anonymous complaints" about her, but still could not give any specifics about her alleged performance problems when Ms. Flowers again asked for them. Mr. Kose did open a book he was holding and reveal that "Sally Firnhaber complained about risk reduction premium credit discrepancies" in 2019 and that "a department business owner had complained that [Ms. Flowers'] meetings were ineffective." Mr. Kose stated that he could not reveal any other alleged complaints because the complainants had asked to remain anonymous.

5

28.    Ms. Flowers advised Ms. Berkovsky in the January 14, 2020, meeting that this was the first time that Mr. Kose had ever provided any specific information about any of the alleged anonymous complaints against her.

29.    Ms. Berkovsky responded that Ms. Flowers had to "prove" that she was "Director-level material," that her concerns about not being promoted to a Director "should never be brought up again," and that she was "making notes and closing her file" on the matter.

30.    After the January 14, 2020, meeting, Mr. Kose continued to discriminate against, harass, and intimidate Ms. Flowers.  He stated that she was "too angry and aggressive," which she believed was racially motivated and discriminatory.  Mr. Kose did not treat any of her non-African American colleagues in the manner that he treated her.  Rather, he praised those colleagues for being "assertive."

31.    Mr. Kose also extended some of Ms. Flowers' work deadlines but then retracted the extensions so that he could criticize her and her work.  He further subjected her to increased scrutiny and micromanagement as compared to non-African American colleagues, including Amy Moore, Lisa Boghozian, and Alicia Hicks.

32.    Beginning in January 2020, Ms. Flowers sought mental health counseling, therapy, and treatment on an ongoing basis and was diagnosed with and prescribed medication for major depressive disorder by her healthcare providers.

33.    In or about February 2020, a Program Director position with Defendant became available after it was vacated by an employee named Julianne.

34.    Ms. Flowers expressed her interest in the Program Director position but it was put on hold and she did not receive it, allegedly due to the COVID-19 pandemic.

6

35.    By September 2020 Ms. Flowers' mental health condition had deteriorated considerably due to the ongoing discrimination, harassment, and retaliation she was experiencing.

36.    On September 17, 2020, Ms. Flowers emailed Ms. Berkovsky about Mr. Kose's continued treatment of her and expressed her fear of retaliation for complaining to HR about it.

37.    On September 23, 2020, Ms. Flowers advised Ms. Berkovsky that she wished to accept the offer of being placed in a Director position elsewhere in the company so that she could make a formal HR complaint and not be retaliated against for doing so.

38.    In response, Ms. Berkovsky asked Ms. Flowers to provide a resume and a cover letter.  Ms. Flowers did so.

39.    On or about January 14, 2021, Ms. Boghozian submitted notice of her intent to resign to take another position in the company.  Ms. Flowers then had to report directly to Mr. Kose instead of to Ms. Boghozian.

40.    On or about February 3, 2021, Mr. Kose took away some of Ms. Flowers' duties, including claims risk duties, and her direct report, Christina Cato, and created a new organizational chart to prevent Ms. Flowers from being promoted or advancing in the company.

41.    Before Ms. Boghozian left her position, she sent an email to Mr. Kose and copied Dr. Ott, Ms. Burress, and Gail Gibson on February 5, 2021, specifically recommending Ms. Flowers for, and advocating that she be promoted to or placed in, a Director position.

42.    On February 8, 2021, Ms. Flowers reported Mr. Kose's continued discrimination, harassment, and retaliation toward her to Ms. Berkovsky.

43.     On February 12 and 15, 2021, Ms. Flowers had meetings with and sent emails and provided documents to Ms. Berkovsky and Senior Human Resources Business Partner Robbie Gadams.

44.     In the February 15, 2021, meeting, Mr. Gadams was condescending and dismissive toward Ms. Flowers, stated that she had "no evidence of discrimination, harassment, or retaliation," that he had communicated with Mr. Kose about her, that there was "no Director position for her," that she had "performance problems" and was "not ready for a Director position," and that there would "be no further investigation" of her reported concerns. Ms. Flowers responded that she believed she was being retaliated against.

45.     Ms. Flowers further requested from Ms. Berkovsky and Mr. Gadams that an HR representative or supervisor attend all one-on-one meetings she had with Mr. Kose due to his discrimination, harassment, retaliation against her, her concerns for her safety and well-being, and since Ms. Boghozian had left her former position and would no longer be attending those meetings.

46.     Mr. Gadams stated to Ms. Flowers that he would "have to ask Brent [Kose] if he was comfortable with that."

47.     Ms. Flowers then made an appointment to speak to Dr. Ott about her reported concerns.

48.     On February 18, 2021, Mr. Kose stated to Ms. Flowers, "I know you spoke to HR and have a meeting with Dr. Ott, but it doesn't matter because you are not getting a Director position because you are not Director-level material." He stated that Ms. Flowers could "explore other options in the company."

8

49. Ms. Flowers responded to Mr. Kose that she was qualified for a Director position and that Ms. Boghozian had stated that she was ready for such a position. She told Mr. Kose that she believed he was discriminating against her because she is a Black woman since he did not scrutinize her Caucasian colleagues or speak to or treat them in the disrespectful manner in which he spoke to and treated her. Ms. Flowers was the only African American employee on the Quality Team.

50. In response, Mr. Kose stated to Ms. Flowers, "You are playing the race card" and that he was "ending this conversation" and calling HR.

51. On February 18, 2021, Ms. Flowers emailed Ms. Berkovsky and Mr. Gadams in Human Resources and reported that Mr. Kose was discriminating against her because of her race.

52. On February 19, 2021, Ms. Berkovsky and Mr. Gadams requested justification for Ms. Flowers' complaint of race discrimination and sent her a meeting request for February 22, 2021.

53. On February 22, 2021, Ms. Flowers met with Dr. Ott, who stated that if she and Mr. Kose were "not a good fit for one another" he would recommend her for another position in another department.

54. Ms. Flowers advised Dr. Ott that she just wanted to be treated fairly as compared to her Caucasian colleagues and with respect. She expressed her fear that Mr. Kose would further retaliate against her and provide negative feedback to hiring managers in other departments, because Ms. Berkovsky and Mr. Gadams had told her that Mr. Kose could do that.

55. Ms. Flowers met again with Ms. Berkovsky and Mr. Gadams on February 22, 2021. Mr. Gadams asked her to provide her "evidence of race discrimination."

56. Ms. Flowers advised Mr. Gadams that she had already provided him evidence and that the conduct documented in her prior emails and documentary submissions to HR was because of her race.

57. Mr. Gadams stated that he had consulted with Defendant's in-house counsel, that Ms. Flowers did not have any evidence of race discrimination, and that if she "took it to court it would get thrown out."

58. Ms. Flowers requested that Ms. Berkovsky and Mr. Gadams do a proper investigation of her reported concerns of race discrimination, harassment, and retaliation and protect her from further discrimination and retaliation by Mr. Kose and by them.

59. Mr. Gadams got angry and yelled at Ms. Flowers and stated that she was "assuming things about [his] character." She again requested that her reported concerns be investigated, that her one-on-one meetings with Mr. Kose be with a third party, and that HR assist her in locating another position within the company as previously offered.

60. Immediately following the February 22, 2021, meetings, Ms. Flowers experienced chest pains, heart palpitations, and shortness of breath and had severe anxiety attacks.

61. Ms. Flowers contacted her therapist and physician and had appointments with them on February 23 and 24, 2021. Her healthcare providers recommended that she immediately take medical leave due to her medical condition.

62. Defendant is a covered employer under the FMLA.

63. Ms. Flowers was eligible for and entitled to the benefits and protections of the FMLA during her employment with Defendant.

64. Ms. Flowers is an individual with a disability within the meaning of the ADA and had an FMLA-qualifying serious health condition during her employment with Defendant. She

had been medically diagnosed with major depressive disorder, anxiety and related conditions since January 2020. These conditions necessitated medical treatment and medical leave during her employment with Defendant. Ms. Flowers' impairment substantially limited her in one or more major life activities. She had a record of impairment and Defendant knew of and regarded her as having an impairment.

65. Notwithstanding her impairment, Ms. Flowers was otherwise qualified to perform the essential functions of her job with Defendant, with or without reasonable accommodation.

66. Ms. Flowers requested FMLA leave and reasonable accommodations from Defendant in the form of medical leave beginning on February 25, 2021. She also repeatedly requested transfers to other available positions within the company as a reasonable accommodation.

67. Ms. Flowers' healthcare providers later advised Defendant that she could return to work in a different position or department, or in the same position or department working for anyone other than Mr. Kose, or working remotely or from home, as she had successfully done during the COVID-19 pandemic.

68. Further, while she was on medical leave, Ms. Flowers applied for and interviewed for multiple available positions within the company, including Director of Knowledge Management, Adjunct Cultural Diversity Instructor, and Manager of Telehealth Operations.

69. Defendant denied Ms. Flowers' applications and requests for transfers to other available positions and refused to place her in any other position in the company.

70. On or about May 27, 2021, Defendant's Time Away From Work ("TAFW") Center advised Ms. Flowers that her FMLA leave would be converted to "general medical leave" in June 2021 and advised her to request further reasonable accommodation from Defendant.

71. On the day that Ms. Flowers' FMLA leave ended, Defendant posted her job as available, albeit under a new title called "Clinical Quality Program Director."

72. On May 27, 2021, Ms. Flowers contacted Hayley Wyatt in HR and requested further reasonable accommodation from Defendant. Ms. Wyatt forwarded Ms. Flowers' request for reasonable accommodation to Ms. Berkovsy and Mr. Gadams.

73. On May 27, 2021, Mr. Gadams emailed Ms. Flowers about her "Reasonable Accommodation Request" and copied Ms. Berkovsky. He provided Ms. Flowers an "Employee Request for Accommodation" form to complete and stated that the three of them would have an "Interactive Conversation" regarding her request.

74. Ms. Flowers completed the Employee Request for Accommodation form and returned it to Mr. Gadams and Ms. Berkovsky on May 31, 2021. In the form she reiterated her request to be placed in or transferred to another available position.

75. In early June 2021 Ms. Berkovsky and Mr. Gadams met with Ms. Flowers to discuss her requests for reasonable accommodation. They further requested all of her medical records and therapy session notes. They stated that "leadership" would need to review and consider her requests for accommodations and that Mr. Kose was among that leadership.

76. Ms. Flowers provided Ms. Berkovsky and Mr. Gadams her healthcare providers' and her TAFW Center case manager's contact information. She also gave her healthcare providers and TAFW Center case manager Ms. Berkovsky's and Mr. Gadams' contact information. She asked these parties to contact each other about her requests for reasonable accommodation. Mr. Gadams stated to Ms. Flowers that he would see what records he and Ms. Berkovsky could get from the TAFW Center.

77.     The TAFW Center advised Ms. Flowers that HR was not entitled to all of her medical records and therapy session notes and was not following proper procedures. Sedgwick insurance carrier representatives and Ms. Flowers' healthcare providers also advised her that she should not release all of her medical records and therapy session notes directly to Defendant's HR representatives, despite their harassing and badgering her to do so.

78.     Accordingly, Ms. Flowers asked her healthcare providers to provide her medical records to the TAFW Center, which she understood to be the proper procedure based on the communications described above.

79.     On June 3, 2021, Mr. Gadams asked Ms. Flowers if she could perform all of the functions listed in her job description. Ms. Flowers stated that she could and that the only restriction she believed she had at the time was working for Mr. Kose. Mr. Gadams admitted that he and Ms. Berkovsky could help her get placed in another position with Defendant. Ms. Berkovsky stated that Dr. Ott had reached out about a position for Ms. Flowers at Parallon, an affiliated entity, as well.

80.     Ms. Flowers reiterated her interest in and request to be placed in or transferred to these and/or other available positions consistent with the applications she had submitted while she was on medical leave and the Employee Request for Accommodation form she had returned to Mr. Gadams and Ms. Berkovsky on May 31, 2021.

81.     On June 3, 2021, Ms. Flowers filed a Charge of Discrimination with the EEOC. She had previously contacted, complained of discrimination to, and had to schedule an appointment with the EEOC on or about March 4, 2021.

82.     The EEOC served a Notice of Charge of Discrimination and copy of Ms. Flowers'

Charge of Discrimination on Defendant on June 10, 2021.  The parties unsuccessfully attempted

mediation of the charge through the EEOC on July 1, 2021.

83.     In mid-June 2021, Defendant unilaterally ended the ADA-mandated good faith

interactive process designed to identify reasonable accommodations for Ms. Flowers, cancelled

her short-term disability coverage and general medical leave or had it cancelled, stated that she

owed Defendant money, and directed her to file a workers' compensation claim, which was

denied on or about June 12, 2021.  Upon the denial of that claim Ms. Flowers was advised that

her general medical leave would be reinstated.

84.     On June 28, 2021, Defendant terminated Ms. Flowers' employment, allegedly

because she was unwilling to work with Mr. Kose and because Defendant was unwilling to

transfer her to any other available position within the company, despite its prior representations

that it could place her in another position.  Dr. Ott communicated the termination decision and

reasons for it to Ms. Flowers.

85.     At the time of her discharge, Ms. Flowers was still on general medical leave and

had applied for short-term and long-term disability, which were not denied until July 2021 and

October 2021, respectively.

86.     Defendant's asserted reasons for discharging Ms. Flowers were pretexts for race

and/or disability discrimination and/or retaliation for opposing and reporting such discrimination

and/or for requesting reasonable accommodations and exercising medical leave.

87.     As described above, Defendant discriminated against Ms. Flowers in the terms,

conditions, and privileges of employment, subjected her to disparate treatment, failed and

refused to promote and/or transfer her, failed and refused to retain her in any capacity as an employee, and discharged her because of her race, in violation of Title VII and Section 1981.

88.    As described above, Defendant retaliated against Ms. Flowers, failed and refused to promote and/or transfer her, failed and refused to retain her in any capacity as an employee, and discharged her because of her opposition to and complaints about race discrimination, harassment, and retaliation, in violation of Title VII and Section 1981.

89.    As described above, Defendant discriminated against Ms. Flowers in the terms, conditions, and privileges of employment, subjected her to disparate treatment, failed and refused to promote and/or transfer her, failed to reasonably accommodate her disability, failed and refused to retain her in any capacity as an employee, and discharged her because of an actual and/or a perceived impairment, in violation of the ADA.

90.    As described above, Defendant retaliated against Ms. Flowers, failed and refused to promote and/or transfer her, failed and refused to retain her in any capacity as an employee, and discharged her for requesting reasonable accommodations in the form of medical leave, transfers to available positions, and working remotely, for opposing discrimination, and/or for exercising FMLA leave, in violation of the ADA and the FMLA.

91.    Defendant's conduct as described in this Complaint was willful and malicious or recklessly indifferent to Ms. Flowers' federally protected rights, entitling her to liquidated and punitive damages.

92.    As a direct result of Defendant's discriminatory and retaliatory conduct, Ms. Flowers has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, severe emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and has incurred attorneys' fees, costs and litigation expenses.

15

## RELIEF REQUESTED

WHEREFORE, Ms. Flowers respectfully requests:

1.      A jury trial;

2.      Back pay and damages for lost benefits;

3.      Compensatory damages for embarrassment, humiliation, severe emotional distress

and anxiety, inconvenience, and loss of enjoyment of life;

4.      Front pay and damages for lost benefits;

5.      Punitive damages under Title VII, Section 1981, and the ADA;

6.      Liquidated damages under the FMLA;

7.      Attorneys' fees, costs and litigation expenses;

8.      Prejudgment interest and, if applicable, post judgment interest; and

9.      Such other and further legal or equitable relief to which she may be entitled.


Respectfully submitted,


s/Douglas B. Janney III
Douglas B. Janney III (TN BPR No. 19112)
Law Office of Douglas B. Janney III
5115 Maryland Way, Suite 126
Brentwood, Tennessee 37027
(615) 742-5900
doug@janneylaw.com

Attorney for Plaintiff